```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
IRONSHORE SPECIALTY INSURANCE           :
COMPANY,                                :
                                        :          20cv1290 (DLC)
                          Plaintiff,    :
              -v-                       :          OPINION AND ORDER
                                        :
MAXON INDUSTRIES INC., MAXON FLEET      :
SERVICES CORP., and LAYTON CAPITAL      :
CORP.,                                  :
                                        :
                          Defendants.   :
                                        :
----------------------------------------X
```

APPEARANCES

For the plaintiff:
Ronald Paltin Schiller
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
Philadelphia, PA 19103

For the defendants:
Mark Lawrence Friedman
Wilkofsky, Friedman, Karel & Cummins
299 Broadway, 17th Floor
New York, NY 10007

DENISE COTE, District Judge:

Ironshore Specialty Insurance Company ("Ironshore") brings this action seeking a declaration of rights under an insurance policy it provided to the defendants. The defendants ask this Court to abstain from exercising jurisdiction in favor of earlier-filed litigation in New York Supreme Court. For the following reasons, the defendants' motion is denied.

**Background**

The following facts are taken from the pleadings and documents attached to or integral to the plaintiff's claims. Ironshore is an Arizona corporation with its principal place of business in Massachusetts. Defendants construct and sell commercial liftgates. Each of the defendants is a California corporation with a principal place of business in California.

Defendants obtained from Ironshore two insurance policies covering the period of June 1, 2015 to June 1, 2016: a primary policy, the Environmental Protection Insurance Coverage Package (the "EPIC PAC Policy"), and an excess policy, the Environmental Excess Liability Policy (the "Excess Policy"). The Excess Policy provides coverage on the basis of the terms, conditions, exclusions, limitations, and warranties contained in underlying policies identified in the Excess Policy. As is relevant here, those underlying policies include the EPIC PAC Policy and an International Advantage Commercial Insurance Policy issued by ACE USA (the "ACE Policy").

The Underlying Action

In 2014 or 2015, the defendants broke ground on a new galvanizing plant in Tijuana, Mexico (the "Plant"). The defendants contracted with GTI Engineering ("GTI") to oversee the installation of galvanizing equipment as part of the construction of the interior part of the Plant, including the

installation of a furnace control system.  On February 23, 2016, during the installation of the furnace system, a fire caused burns to one of GTI's employees, David True.  On February 8, 2018, True sued the defendants in California state court, asserting a single claim of negligence and seeking damages arising out of the February 23 fire at the Plant (the "Underlying Action").

On October 31, 2019, Ironshore learned that ACE USA was representing the defendants in the Underlying Action pursuant to the ACE Policy.  On November 6, 2019, Ironshore issued a coverage letter, reserving its rights to deny coverage under the Excess Policy based on a Designated Ongoing Operations Exclusion contained in the ACE Policy and incorporated into the Ironshore Excess Policy.

The New York Action

On June 20, 2019, the defendants sued Ironshore in New York state court (the "New York Action").  Layton Capital Corp., et al. v. Ironshore Specialty Insurance Company, Index No. 156151/2019.  In the New York Action, the defendants sought a declaration that they are entitled to defense costs and indemnification under the EPIC PAC Policy and the Excess Policy.  The complaint in the New York Action identifies those two documents as the "subject policies"; it does not request a

declaration pursuant to the Excess Policy insofar as it incorporates the ACE Policy.

Ironshore filed its answer in the New York Action on March 11, 2020. In March 2020, New York State entered emergency orders in response to the COVID-19 pandemic. As of the date of this Opinion, no preliminary conference has been held or scheduled and no discovery schedule is in place in the New York Action.

The Federal Action

Ironshore filed this diversity action on February 13, 2020. It seeks a declaration that the defendants are not covered under the Excess Policy insofar as that agreement follows the ACE Policy. Specifically, it seeks a declaration that an exclusion in the ACE Policy -- the Designated Ongoing Operations Exclusion -- bars the defendants' claim to coverage under the Excess Policy. Ironshore also requests a declaration that the defendants have not vigorously defended themselves in the Underlying Action. The defendants filed their answer on March 12, 2020. Defendants assert two counterclaims with their answer. First, they seek a declaration that Ironshore must indemnify the defendants under the EPIC PAC Policy and the Excess Policy. This is the same claim that the defendants are pursuing in the New York Action. Second, the defendants request

damages stemming from Ironshore's breach of the EPIC PAC Policy and the Excess Policy.

The defendants filed this motion to dismiss or stay this action, relying on an abstention doctrine, on May 29, 2020. It became fully submitted on July 17.

## Discussion

"[A]bstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012) ("Niagara Mohawk") (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) ("Colorado River")). "The abstention doctrine comprises a few extraordinary and narrow exceptions to a federal court's duty to exercise its jurisdiction, and in this analysis, the balance is heavily weighted in favor of the exercise of jurisdiction." Niagara Mohawk, 673 F.3d at 100 (citation omitted).

Before a federal court may abstain from exercising jurisdiction, it must determine whether the state and federal proceedings are parallel. Sheerbonnet, Ltd. v. Am. Express Bank Ltd., 17 F.3d 46, 49-50 (2d Cir. 1994) (citing Colorado River, 424 U.S. at 800). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Niagara Mohawk, 673 F.3d at 100

(citation omitted).  "Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit." Telesco v. Telesco Fuel & Masons' Materials, Inc., 765 F.2d 356, 362 (2d Cir. 1985).

If the federal and state actions are parallel, Colorado River requires a court to consider six factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

Kaplan v. Reed Smith LLP, 919 F.3d 154, 158 (2d Cir. 2019) (citation omitted).  "No single factor is necessarily decisive, and the weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case."  Id. (citation omitted).  Where a factor "is facially neutral, that is a basis for retaining jurisdiction, not for yielding it."  Id. (citation omitted).  In diversity actions, where state law provides the rule of decision, the fifth factor ordinarily carries "little weight."  Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d Cir. 1986).  But

see Gen. Reinsurance Corp. v. Ciba-Geigy Corp., 853 F.2d 78, 82 (2d Cir. 1988).

As for the threshold question, this action and the New York Action are parallel. The parties in each suit are identical. And, the central question in the cases are mirror images: in the New York Action, the defendants seek a declaration that Ironshore must indemnify them in the Underlying Action, and in this case, Ironshore seeks a declaration that it is not required to do so. Both suits arise from Ironshore's obligations to defend and indemnify the defendants under the Excess Policy.

Weighing the six Colorado River factors, this case does not present exceptional circumstances that would support the surrender of jurisdiction. There is no res at issue in either suit, and the state and federal fora are equally convenient. The rule of decision ultimately lies in New York state contract law, giving the fifth factor "little weight." Bethlehem Contracting Co., 800 F.2d at 328.

Turning to the third factor, the risk of piecemeal or inconsistent litigation does not weigh in favor of abstention. As Ironshore points out, this action contains the full set of claims arising under the Excess Policy. Any risk of inconsistent rulings would be obviated by the application of claim preclusion principles. "[T]he primary context in which [the Court of Appeals has] affirmed Colorado River abstention in

7

order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." Woodford v. Cmty. Action Agency of Greene Cty., Inc., 239 F.3d 517, 524 (2d Cir. 2001).

The fourth factor, the order in which the lawsuits were filed and the degree of progress in each, similarly counsels against dismissal.  While the New York Action preceded the federal litigation by approximately seven months, this action has moved more expeditiously.  After an initial pretrial conference in April, this Court set a schedule for discovery and summary judgment practice.  Discovery in this matter will conclude by January 2021.  In the New York Action, by contrast, there has yet to be a preliminary conference and there is no discovery schedule in place.  This action will therefore give the parties a swifter resolution of the coverage issues. "[E]ven where, as here, a state action was commenced before the federal suit, that factor will carry little weight if there has been limited progress in the state court suit." Niagara Mohawk, 673 F.3d at 102 (citation omitted).

The defendants argue that the limited progress in the New York Action is due to Ironshore's lack of diligence in filing an answer in that action.  Even in the seven months since Ironshore's answer was filed, however, the New York Action has

8

not advanced.  A March 2020 order of the Chief Administrative Judge of the New York State Courts adjourned all non-essential conferences due to the ongoing COVID-19 public health emergency.  While New York County Supreme Court has resumed modified operations, there is no preliminary conference scheduled in the New York Action.

Turning to the final Colorado River factor, only this action affords the opportunity for a complete ventilation of the coverage issues in this matter.  "In analyzing the sixth factor in the special circumstances test, federal courts are to determine whether the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties."  Vill. of Westfield v. Welch's, 170 F.3d 116, 124 (2d Cir. 1999) (citation omitted).  As noted above, only this action presents the question of the Ironshore's coverage obligation under the Excess Policy to the extent it incorporates both the EPIC PAC Policy and the ACE Policy.

The defendants argue that Ironshore could have amended its answer in the New York Action to assert an affirmative defense that the ACE Policy did not require Ironshore to indemnify the defendants for the Underlying Action.  That is true but does little to change the analysis recited above.  Given that the New York Action has yet to proceed to discovery, while discovery in

9

this action will be completed in a matter of months, the federal forum offers a more efficient path to full resolution.

Finally, the defendants assert that the Colorado River doctrine does not supply the correct standard for resolution of their motion. They argue that a discretionary abstention standard applies since this action seeks declaratory relief. Wilton v. Seven Falls Co., 515 U.S. 277 (1995); Brillhart v. Excess Insurance Co. of America, 316 U.S. 491 (1942).

"The Brillhart abstention doctrine[,] allows a district court in its discretion to abstain from rendering a declaratory judgment when the questions in controversy between the parties to the federal suit can better be settled in the proceeding pending in the state court." Travelers Ins. Co. v. Carpenter, 411 F.3d 323, 338 (2d Cir. 2005) (citation omitted) (emphasis omitted). The Brillhart/Wilton standard does not apply, however, where plaintiff does not "seek purely declaratory relief," but also, for example, seeks "damages caused by the [defendant's] conduct." Niagara Mohawk, 673 F.3d at 106 (citation omitted). The presence of a counterclaim for damages calls for the application of the exceptional circumstances test set forth in Colorado River, and not the Brillhart/Wilton discretionary standard. Vill. of Westfield, 170 F.3d at 124 n.5 (noting that the Brillhart/Wilton standard did not apply where plaintiff and defendant asserted claims for damages).

10

Although Ironshore's claim is for declaratory relief, the defendants have brought a counterclaim for damages based on Ironshore's alleged breach of the EPIC PAC Policy and the Excess Policy. Having expanded the scope of this action by asserting a counterclaim for damages, the defendants cannot now maintain that the abstention determination is governed by the more liberal standard applied to actions that only arise under a court's jurisdiction to issue a declaratory judgment. Accordingly, Colorado River supplies the correct standard for review of this motion.

In any event, the pandemic has prevented the New York Action from proceeding. Therefore, if it were entirely a matter of discretion, this Court would decline to abstain in favor of the pending New York Action. For these same reasons, a stay of this action is not warranted.

## Conclusion

The defendants' May 29 motion seeking abstention or a stay is denied.

Dated:   New York, New York
         October 22, 2020

_____
DENISE COTE
United States District Judge